[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff CT Page 5666 husband against the defendant wife. The parties were married on June 13, 1970 in Massapequa, New York, when they were each 20 years old. They met at age 16 and fell in love. There are two children, issue of the marriage, Kristyan who is twenty years of age and a junior at Fairfield University, and Brian who is 17 years of age (he will be 18 on October 3rd of this year) and a senior at Fairfield Prep and desirous of entering Gettysburg College in Pennsylvania in the fall. The parties have been residents of Connecticut for fourteen years when they moved to the present marital home in Stamford.
The plaintiff is a senior accountant at Deloitte Touche, one of the Big Six and the result of the merger of Touche, Ross and Deloitte, Haskins Sells in 1989. The offices of Deloitte Touche are worldwide and there are 1400 partners in the firm. The plaintiff works in the New York City office as an audit partner specializing in retailing and, more recently, as the partner in charge of Human Resources. His average work schedule involves 60 to 70 hours per week plus commuting time from Stamford to New York and return. He leaves for the office between 6:30 and 7:00 a.m. and returns home between 8:00 and 8:30 p.m. The defendant and the plaintiff's partner, Mr. Greenblatt, both testified that the plaintiff was a very hard worker.
As a partner in the firm, the plaintiff receives a draw of $5,400 gross every two weeks and distributions in April, June, September and January to coincide with estimated income tax dates. The net weekly draw amount is $2,026. The fiscal year of the partnership is June 1 to May 31 and the distributions for the 1995 fiscal year are: January, 1995, 10%; April, 1995, 50%; June, 1995, 30%; September, 1995 5%; and January, 1996, 5%.
The plaintiff is in good health. He has a B.S. degree from St. John's University with a major in accounting. Upon his graduation from St. John's in 1971, he went immediately to work at Touche Ross Company. He became a Fellow in 1979 to 1981 with the Securities Exchange Commission in Washington, D.C., and in August, 1981, was admitted to partnership in Deloitte, Haskins Sells.
The defendant, like the plaintiff, is 45 years of age. She attended C. W. Post College for her freshman year of college and then Nassau Community College. At the time of their marriage, she was working for Perfect Line Manufacturing Company as a bookkeeper. She continued working in this position until Kristyan was born in 1975. She then stayed home to care for the children until the mid 1980's when she worked for Lord Taylor for about a year part time. For the last year and a half, she has worked for Exposures, a catalogue company, placing CT Page 5667 pictures in frames to be photographed in the catalogue. She is paid $10 per hour in this job but works less than twenty hours per month.
During the marriage, the plaintiff ran the household, ran the errands, cut the lawn, planted the flowers, did the housekeeping, participated in school functions, served as vice president of the PTA, served as class mother and chauffeured the children to all of their after school activities. In addition, the defendant organized extracurricular activities for the children and participated in volunteer activities such as FISH, Girls, Inc. and driving for the elderly. She made drapes, pillows and curtains, painted and speckled walls and generally "did it all." She tried to be very supportive and to carry a lot of the burden so the plaintiff was free to be the bread winner.
The plaintiff's income is subject to numerous mandatory deductions, some of which are necessitated because of his general partnership. As general partner, he is subject to unlimited liability. He is required, therefore, to make mandatory contributions to the partnership capital account. In addition, upon becoming a partner, it was necessary to borrow to pay in capital, and loan repayments and interest on these loans must be paid from his partnership income. The figures contained in Schedule 2, which include the figures contained in Schedule 1, both attached to his financial affidavit, more accurately reflect the true income and mandatory deductions from income.
While the defendant argues that the figures contained in those schedules are not yet determined and that the figures for fiscal year 1994 should be used, the court disagrees. The figures for 1995 are less than those for 1994 and so the reason for the defendant's wish to use those figures. However, the 1995 figures are more accurate for purposes of a current determination, the fiscal year for 1995 to close on June 5, 1995 (the first Monday following May 31). The court finds that the figures for year end 1995 are more accurate as a reflection of current income than the figures for fiscal year end May, 1994, even though the final payment for fiscal year end May, 1994 was January 15, 1995.
The difference between Schedules 1 and 2 and that reported on the first page of plaintiff's affidavit is the inclusion on page 1 of $13,416 being money to be paid out on the Vanguard loan borrowed to pay school tuitions and the listing of unreimbursed business expense as a deduction in Schedule 2. The difference between the two figures is $13,684. The figure for insurance premiums differs by $80 in the two presentations which, when deducted from the $13,684 figure, is $13,604, the difference between $108,314 and $94,650. The court finds net CT Page 5668 spendable income to be $108,314 as reflected on page 1 of plaintiff's financial affidavit. It is this figure upon which financial orders should be based and not the gross figure of $364,700 ($316,800 plus ROI [return on investment] of $47,900) or the figure of $316,800.
The parties have presented evidence to prove the defendant's alleged infidelity in the years 1984-1985 with one Michael DeVito. Mr. DeVito was called as a witness and denied that there had been any sexual relations with the defendant. These allegations were denied also by the defendant. The plaintiff admitted his unfaithfulness and an affair he had had with a coworker in 1988-1989. This occurred during a period of time when he was out of the home. In January, 1990, he moved back into the home. The parties agree that in April, 1994, the relationship had irretrievably broken down. The parties had been in and out of counseling, and it seemed they were not making any progress. They were having difficulty in communicating.
It is clear from the evidence that the marriage has broken down irretrievably. While each of the parties has tried to place blame on the other for the breakdown, the court finds that each of the parties has equally contributed to the breakdown of the marriage.
The defendant seeks 50 percent of the plaintiff's partnership capital account. At present, the net value of the plaintiff's capital account is $316,000 (rounded). This is not available to the plaintiff unless he retires or withdraws from the partnership. It will continue to increase by reason of the yearly mandated contributions to this account. This capital is at risk and may be taken by creditors or may respond to a judgment. The defendant has no say as to withdrawals from that account. At present, the net value of the account is $151,462.
Certainly, the defendant should not be entitled to those contributions to the capital account after the date of dissolution. Since the account is at risk, this capital may never be distributed to the plaintiff, neither does he have any modicum of control over this account. The date upon which the plaintiff may receive his capital account as well as the situation of the parties upon that date is necessarily uncertain. The court considers the account in the nature of a contingency since it is wholly at risk and may never be distributed to the plaintiff at any time. See Rubin v. Rubin, 204 Conn. 224, 232
(1987). The court's decision with respect to the capital account is not based solely upon the contingency nature of the account but also upon the factors of § 46b-81 of the General Statutes and the court's conclusion that the defendant should not have any part of the plaintiff's capital account at the time of its distribution, whenever CT Page 5669 that may be.
The defendant's claim for 75 percent of the net proceeds of sale of the real property is denied. The parties have contributed equally to the acquisition, preservation and appreciation in value of their respective estates, the defendant contributing her time and energies in the running and operation of the household and the raising of the children and the plaintiff contributing his time and energies to the production of income and financial assets of the parties.
With regard to the liabilities of the parties, the plaintiff shall be responsible for one-half of the American Express bill, the United Way pledge, and American Limousine. The remaining half of the American Express expense was reimbursed but went for household expenses and the rest of the liabilities reported on the plaintiff's financial affidavit, other than the liability to Attorney Shanley, are found by the court to be joint debts and shall be paid out of the proceeds of sale of the marital home. The liabilities reported in the defendant's financial affidavit, except for the PNC-VISA bill, the money borrowed from the defendant's parents and the amount owed to Cummings Lockwood, shall also be paid from the proceeds of sale of the marital home.
The amount owed to plaintiff's mother of $15,000 should properly be paid from the proceeds of sale of the marital home since it was a loan by her to the parties for the purchase of their first home. This sum was never paid back to her upon the sale of any of the former houses.
In determining the proper orders in this case the court must consider the factors set forth in § 46b-81 and § 46b-82 and §46b-84 of the General Statutes and the Child Support Guidelines together with the provisions of § 46b-62. With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' [Citation omitted.] Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, CT Page 5670 station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, [citation omitted], no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
The court has considered all of the criteria of §§ 46b-81 and 46b-82
of the General Statutes together with the provisions of § 46b-62 and all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr,183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307,313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. Each of the parties is equally at fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the ground of irretrievable breakdown of the marriage. CT Page 5671
2. The parties shall have joint legal custody of their child, Bryan, who shall reside primarily with the defendant. The plaintiff shall have rights of reasonable visitation upon reasonable notice.
3. Commencing upon the first day of the month following the closing for the sale of the marital home, the plaintiff shall pay the defendant during his lifetime $48,000 annually as alimony payable monthly at the rate of $4,000 until her death, remarriage or co-habitation pursuant to Connecticut General Statutes § 46b-86b.
4. The plaintiff shall pay to the defendant by way of support for the minor child Bryan the sum of $1,400 per month in advance commencing upon the first day of the month following the sale of the marital home and payable upon the first of each month thereafter to and including September 1, 1995. Bryan will be eighteen on October 3, 1995 so support shall terminate upon the payment of the September, 1995 amount.
5. The defendant shall be responsible for Bryan's support and there shall be no reduction in the alimony when Bryan attains age 18 on October 3, 1995. The plaintiff shall maintain medical insurance for Bryan and the parties shall share equally the unreimbursed medical expenses until he attains age eighteen. The defendant shall have the benefit of the provisions of § 46b-84 (d) of the General Statutes.
6. A Qualified Domestic Relations Order shall enter transferring to the defendant fifty (50%) percent of the Deloitte Touche Defined Benefit Plan, which pays approximately $2,033 per month commencing in the year 2011.
7. In the event the plaintiff becomes vested in the Deloitte Touche Unfunded Non-Qualified Pension Plan he shall designate the defendant as the survivor beneficiary of the ten year certain term with respect to said Plan.
8. A Qualified Domestic Relations Order shall enter transferring one-half of the Deloitte Touche 401-K Plan to the defendant and one-half of the Deloitte Touche Profit Sharing Plan (Keogh) to the defendant as of the date hereof, adjusted for investment gains and losses until the transfer.
9. The parties' residence shall be placed immediately upon the market for sale at a listing price and with a broker mutually agreeable to the parties. The gross proceeds of sale shall be divided as CT Page 5672 follows: real estate commissions and customary closing costs shall be paid, first mortgage shall be paid, the outstanding real estate taxes shall be paid, and the following liabilities of the parties shall be paid: one-half of the American Express bill, $15,000 owed to plaintiff's mother as well as the rest of the liabilities reported on the plaintiff's financial affidavit except the United Way pledge and American Limousine and Attorney Shanley's bill together with the liabilities on the defendant's affidavit except PNC-VISA, money borrowed from defendant's parents and Cummings Lockwood's bill. The balance of the proceeds shall be divided equally between the parties. The court shall retain jurisdiction over the sale of the property. The plaintiff shall pay for the following repairs and maintenance for the home to fix it up for sale:
(a) dry rot and tile repair — $600;
(b) power washing and trim painting outside of residence — $1,600;
(c) spring cleanup and mulching — $440;
(d) electrical work to repair two lights in kitchen and bath.
10. The plaintiff shall be solely responsible for all normal and routine family and household bills until the commencement of the payments for alimony and support.
11. The defendant shall retain her interest in her IRA.
12. The plaintiff shall retain his interest in Thirty Partners Limited Partnership, the Partner Wealth Fund and his IRA.
13. The wife shall be responsible for the VISA bill in her own name and the loan to her parents.
14. The plaintiff shall be responsible for the remaining half of the American Express bill, the United Fund pledge and the bill of American Limousine.
15. The plaintiff shall maintain his existing AICPA life insurance policy with a face value of $300,000 and name the defendant the beneficiary so long as he has an obligation to pay her alimony. In the event the insurance is not maintained at the time of his death, unless there be a modification as hereinafter provided, the difference between the amount of the insurance if less than CT Page 5673 $300,000 and $300,000 shall be a charge against the plaintiff's estate. The maintenance of this policy may be subject to modification pursuant to the provisions of Connecticut General Statutes § 46b-86 (a).
16. Except as otherwise noted herein, the assets as reported in the plaintiff's financial affidavit shall be his free of any claim or demand by the defendant.
17. Except as otherwise noted herein, the assets as reported in the defendant's financial affidavit shall be hers free of any claim or demand by the plaintiff.
18. The plaintiff shall assist the defendant to obtain the COBRA conversion forms.
19. The parties shall attempt to divide their tangible personal property located in the family home. In the event of a disagreement, the matter is referred to the Family Relations Office for a recommendation. The court shall retain jurisdiction over the division of the personal property in the event the parties are unable to resolve their differences with the assistance of Family Relations.
20. Each party shall pay his or her own attorney's fees.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE